UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Joe Hand Promotions, Inc.,                                 Case No. 22-cv-0423 (WMW/LIB)

           Plaintiff,

           v.                                                                **ORDER**

RLWRHC Inc., *doing business as*
*O'Leary's Pub*, and Barrett Prody,

           Defendants.

---

Before the Court is Plaintiff's motion for default judgment. (Dkt. 14). For the reasons addressed below, the Court grants the motion.

## BACKGROUND

Plaintiff Joe Hand Promotions, Inc., (JHP) is a Pennsylvania corporation. Defendant RLWRHC Inc. (RLWRHC) is a Minnesota corporation that operates, maintains and controls O'Leary's Pub, which is located in Moorhead, Minnesota. Defendant Barrett Parody, a resident of Minnesota, is an officer, director, shareholder, member and/or principal of RLWRHC and owns and operates O'Leary's Pub.

JHP licenses sporting events to commercial establishments such as bars and restaurants. JHP acquired the exclusive distribution rights to the broadcast of *Ultimate Fighting Championship® 244: Jorge Masvidal vs. Nate Diaz* (the Program). JHP alleges that Defendants, without JHP's consent, illegally intercepted the Program without paying for a commercial license and broadcast the program at O'Leary's Pub to attract

customers. According to JHP, Defendants unlawfully obtained the Program through an unauthorized cable signal, satellite signal or internet stream.

On February 15, 2022, JHP commenced this action, advancing two claims for relief. Count I alleges that Defendants violated certain provisions of the Cable Communications Policy Act, 47 U.S.C. §§ 553, 605(a). Count II alleges that Defendants engaged in copyright infringement, in violation of 17 U.S.C. §§ 106, 501. JHP served Defendants on March 31, 2022. On May 10, 2022, JHP applied for an entry of default against both Defendants, which the Clerk of Court entered on May 16, 2022. JHP now moves for a default judgment against Defendants solely on the basis of Count I—Defendants' alleged violations of the Cable Communications Policy Act.

## ANALYSIS

To obtain a default judgment, a party must follow a two-step process. The party seeking a default judgment first must obtain an entry of default from the Clerk of Court. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, JHP sought an entry of default, which the Clerk of Court entered against Defendants on May 16, 2022. The entry of default is supported by the record, which reflects that Defendants were properly served with the complaint and summons and have failed to answer or otherwise respond to the complaint.

I.   Allegations in the Complaint

After default has been entered, the party seeking affirmative relief "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Upon default, the factual allegations in the complaint are deemed admitted except those relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *accord Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). However, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray*, 595 F.3d at 871 (internal quotation marks omitted); *accord Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010).

A.   Satellite Piracy (47 U.S.C § 605(a))

JHP alleges that Defendants engaged in satellite piracy, in violation of 47 U.S.C § 605(a). Section 605(a) provides, in relevant part, that "no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception." Under the Cable Communications Piracy Act, "[a]n aggrieved person must show that the defendant (1) intercepted or aided the interception of proprietary satellite programming and (2) divulged or published, or aided in the divulging or publishing of, the programming transmitted by the plaintiff." *Zuffa, LLC v. Parker*, No. 11-3451 (MJD/SER), 2012 WL 1466773, at *2 (D. Minn. Apr. 27, 2012) (quoting *DirecTV v. Deskin*, 363 F. Supp. 2d 254, 258 (D. Conn. 2005)). An aggrieved person includes "any person with proprietary rights in the intercepted communication by

3

wire or radio, including wholesale or retail distributors of satellite cable programming." 47 U.S.C. § 605(d)(6). Here, JHP alleges that it had a proprietary right to distribute the Program. Defendants intercepted the Program, JHP alleges, and broadcast the Program at O'Leary's Pub. When accepted as true, the facts JHP alleges in the complaint set forth a valid claim under 47 U.S.C § 605(a).

### B. Cable Piracy (47 U.S.C § 553(a)(1))

JHP also alleges that Defendants engaged in cable piracy, in violation of 47 U.S.C. § 553(a)(1). Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C § 553(a)(1). Here, JHP alleges that Defendants intercepted the Program, without authorization, through a cable signal. When accepted as true, the facts JHP alleges in the complaint set forth a valid claim under 47 U.S.C. § 553(a)(1).

## II. Damages

A district court also must ascertain the amount of damages before entering a default judgment. *See Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000). A party seeking a default judgment must prove its damages to a reasonable degree of certainty. *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001). A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly. *Pope v. United States*, 323 U.S. 1, 12 (1944). JHP seeks statutory damages

4

under 47 U.S.C. § 605(e)(3)(C)(i)(II), enhanced damages under 45 U.S.C. § 605(e)(3)(C)(ii) and individual liability under 47 U.S.C. § 605.

### A. Statutory Damages

JHP seeks $1,500 in statutory damages pursuant to 47 U.S.C. § 605. Section 605 authorizes recovery statutory damages up to $10,000. *See* 47 U.S.C. § 605(e)(3)(C)(i)(I). Courts have broad discretion to determine the exact amount of damages. *See Comcast of Ill. X v. Multi-Vision Elecs., Inc.*, 491 F.3d 938, 946–47 (8th Cir. 2007). "Statutory damages are compensatory in nature" and are "intended to compensate the plaintiff for the harm that it suffered because of the defendant's actions." *J & J Sports Prods., Inc. v. Outlaw-Soderlind*, No. 14-CV-4951 (PJS/HB), 2016 WL 6821066, at *1 (D. Minn. Nov. 16, 2016). Here, JHP has offered evidence that the licensing fee for broadcasting the Program in an establishment with a Fire Code Occupancy of 101–125 would have cost $1,270. JHP attaches to its motion for default judgment the affidavit of Paul Carlsen, who visited O'Leary's Pub on the date of the broadcast. Carlsen attests that, in his approximation, O'Leary's Pub has a capacity of 100–110 people. Based on the record before the Court, JHP has established its entitlement to damages in the amount of $1,270, which represents the licensing fee Defendants should have paid in order to broadcast the Program.

JHP also contends that the Court should award damages to account for any profits Defendants gained from selling drinks and meals to patrons during the broadcasting of the Program. An aggrieved party may recover "any profits of the violator that are attributable to the violation which are not taken into account in computing the actual

5

damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation." 47 U.S.C. § 605(e)(3)(C)(i)(I). Here, JHP has introduced evidence that there were approximately 17–20 people at O'Leary's Bar during the broadcast of the Program. Because Defendants have not appeared in this action, JHP cannot prove Defendants' gross revenue or the exact share of the profits attributable to factors other than the broadcast of the Program. But based on the evidence in the record, the Court determines that $230 is a reasonable estimation of profits. *See Comcast*, 491 F.3d at 947 (observing that damages "may not be determined by mere speculation or guess, but they may be subject to 'just and reasonable inference, although the result be only approximate.'" (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931))). JHP, therefore, has established to a reasonable degree of certainty its entitlement to $230 in damages.

JHP also contends that it should be compensated for the damage to its goodwill and reputation caused by the unlawful broadcast of the Program. JHP maintains that as part of its negotiations with other establishments, it represents the proximity of other authorized establishments. As a result, an unauthorized broadcast can cause a loss of goodwill and reputation because JHP's potential customers might conclude that JHP has misrepresented the proximity of the nearest establishment broadcasting the same program. But because JHP does not quantify the damages it has suffered because of any

loss of goodwill and reputation, JHP has not established to a reasonable degree of certainty its entitlement to such damages.

In summary, JHP has established to a reasonable degree of certainty its entitlement to $1,500 in statutory damages, representing the $1270 licensing fee and $230 approximation of Defendants' violation-related profits.

### B. Enhanced Damages

JHP seeks $7,500 in enhanced damages under Section 605(e)(3)(C)(ii). Pursuant to that statute, in "any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii). Enhanced damages are "intended to punish willful violations of the law and deter similar misconduct in the future." *J & J Sports Prods., Inc.*, 2016 WL 6821066, at *1 (internal quotation marks omitted). "Willfulness is 'disregard for the governing statute and an indifference to its requirements.' " *Comcast*, 491 F.3d at 947 (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)). Here, JHP alleges that Defendants "intentionally pirated or assisted in the intentional piracy of the Program," either by intercepting a cable or satellite service, moving a receiver from a residence to their business or obtaining the Program in violation of their television service provider agreement. Taken as true, JHP's allegations support a finding that Defendants acted willfully. Indeed, it is difficult to discern how Defendants would not have known their actions were unlawful. *See J & J Sports Prods., Inc.*, 2016 WL

6821066, at *2 (observing that the defendant "could not have 'mistakenly, innocently, or accidentally' intercepted the boxing match that he unlawfully exhibited"). The record also supports a reasonable inference that Defendants intercepted the Program for the purposes of commercial advantage because Defendants advertised their broadcast of the Program and invited the public to "come out and watch [the Program] with us." Accordingly, JHP has established that Defendants acted willfully.

To determine the proper amount of enhanced damages, courts in this District generally multiple the statutory damages by three to six times. *See, e.g.*, *id.*; *J & J Sports Prods., Inc. v. Cortes*, No. 10-cv-1952 (RHK/JJK), 2012 WL 2370206, at *2 (D. Minn. June 22, 2012). When deciding which multiplier to employ, courts generally consider whether there have been repeated violations over an extended period of time, whether the defendant advertised the event or charged a cover fee and the amount of the defendant's profit from the unlawful broadcast. Here, JHP does not allege that Defendants have engaged in repeated violations over an extended period of time. And although Defendants advertised the event, the record does not reflect that Defendants charged a cover fee. The record also does not reflect the extent of Defendants' profit from the event. For these reasons, the Court grants Defendants' request of $7,500 in enhanced damages, which represents Defendants' statutory damages multiplied by three.

C.  **Individual Liability**

JHP seeks to impose individual liability on Brody because he owned and operated O'Leary's Pub with no distinction from RLWRHC, Inc. To support the imposition of personal liability, JHP must establish that there is "no distinction" between Brody's

8

actions and RLWRHC, Inc.'s. *Comcast*, 491 F.3d at 947. It is not sufficient to establish merely that the individual was the sole proprietor and shareholder of the company, however. *See Joe Hand Promotions, Inc. v. Sharp*, 885 F. Supp. 2d 953, 956 (D. Minn. 2012) (observing that "in order to show individual liability, allegations of ownership of the establishment, without more, are insufficient" (internal quotation marks and emphasis omitted)). JHP alleges that Brody "owned and operated [O'Leary's Pub] with no distinction from RLWRHC." But the Court cannot rely on that allegation because it is a "mere conclusion[] of law." *See Murray*, 595 F.3d at 871 (internal quotation marks omitted). The record reflects only that Brody was the chief executive officer of RLWRHC. Without more, JHP has not sufficiently alleged that there was no distinction between Brody's actions and RLWRHC's. For this reason, the Court does not impose individual liability on Brody.

### III. Attorney's Fees and Costs

JHP seeks $1,800 in attorneys' fees and $852 in costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). In an action under Section 605, the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

The Eighth Circuit applies the lodestar method to calculate a reasonable attorney's fee. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996). Under this method, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled. *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988). To calculate the lodestar amount, a district court multiplies the number of hours reasonably expended by a

reasonable hourly rate, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), which is "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The party seeking an attorneys' fees award bears the burden to establish entitlement to an award with documentation that addresses the nature of the work and the appropriateness of the hourly rates and hours expended. *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

Counsel for JHP attests that his billable rate is $300 for anti-piracy litigation and he anticipates that he will expend a minimum of six hours on this action. Counsel for JHP also attests that it incurred $852 in costs, representing a $402 filing fee and $450 in service fees. Based on the attestation of JHP's counsel, JHP has established its entitlement to an attorneys' fees award of $1,800 and $852 in costs.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1. Plaintiff Joe Hand Promotions, Inc.'s motion for default judgment, (Dkt. 14), is **GRANTED** as to Count I.

2. Count II of Plaintiff Joe Hand Promotions, Inc.'s complaint, (Dkt. 1), is **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk of Court shall enter judgment as follows:

    a. $9,000 in damages.

    b. $1,800 in attorneys' fees.

  c.  $852 in costs.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 5, 2023          s/Wilhelmina M .Wright
                       Wilhelmina M. Wright
                       United States District Judge